2021R01234/RLT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY


FILED
SEP 09 2025
AT ~~8:30~~ 1:34 /M
CLERK, U.S. DISTRICT COURT - DNJ

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. (MCA) |
| v. | : | Crim. No. 25- 536 |
| YELENA LANDA | : | 21 U.S.C. § 841(a)(1), (b)(1)(C) |

### INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges as follows:

### COUNTS ONE THROUGH FOUR
(Unlawful Distribution of a Controlled Substance)

1. Unless otherwise indicated, at all times relevant to this Indictment:

**Individuals and Entities**

a. Defendant Yelena Landa ("LANDA") was a resident of Jersey City, New Jersey and was a licensed nurse practitioner in the State of New Jersey.

b. LANDA was a registered practitioner with the U.S. Drug Enforcement Administration ("DEA"), which allowed her to dispense and issue prescriptions for Schedule II through Schedule V controlled substances, within the bounds of the Controlled Substances Act ("CSA"), so long as it was in the usual course of professional practice and for a legitimate medical purpose.

c. From in or around May of 2019 through in or around January 2024 and again from in or around June 2024 through in or around January 2025, LANDA worked as a licensed nurse practitioner at MEDICAL PRACTICE-1, located in Jersey City, New Jersey.

    d.    MEDICAL PRACTICE-1 was focused on pain management.

    e.    Patient-1 was a patient of MEDICAL PRACTICE-1 since in or around September 2017 through in or around June 2023. Starting in or around May 2019, Patient-1 became LANDA's patient, and LANDA prescribed controlled substances to Patient-1.

### The Controlled Substances Act

    f.    The CSA, codified in Title 21 of the United States Code, and its promulgating regulations, classified drugs into five schedules depending on a drug's acceptable medical use and its abuse and dependency potential.

    g.    The term "controlled substance" meant a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV, and V, as designated in Title 21 of the United States Code.

    h.    Schedule I controlled substances, such as heroin, did not have an acceptable medical use in the United States. Schedule II through Schedule V controlled substances had acceptable medical uses.

    i.    The medical uses of Schedule II controlled substances were severely restricted because they had a high potential for abuse. Schedule II controlled substances included prescription medicines such as oxycodone (commonly known by the brand names OxyContin and Percocet) and hydrocodone (commonly known as Vicodin).

    j.    Oxycodone was classified as a Schedule II controlled substance, which was typically used for the relief of pain. Oxycodone was generally formulated in strengths of 15 milligrams ("mg"), 20 mg, 30 mg, 40 mg, 60 mg, and 80 mg. Often,

drug abusers crushed the protective time-release coating on the pill and then snorted, ingested, or injected it to obtain the effects of the drug all at one time. Oxycodone used in this fashion produced a heroin-like euphoria. Oxycodone is a highly addictive drug.

k.  Title 21, United States Code, Section 841(a)(1), provided that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, a controlled substance."

l.  Title 21, United States Code, Section 802(10), provided that the term "dispense" meant "to deliver a controlled substance to an ultimate user . . . by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery."

m.  Title 21, United States Code, Section 802(21), provided that "'practitioner' means a physician . . . or other person licensed, registered, or otherwise permitted . . . . to distribute, dispense . . . a controlled substance . . . ."

n.  The CSA authorized Schedule II controlled substances to be dispensed to individuals by a valid prescription. 21 U.S.C. § 829.

o.  Chapter 21, Code of Federal Regulations, Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of [her] professional practice."

3

p.  Chapter 21, Code of Federal Regulations, Section 1306.04 further provided that "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

2.  On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendant

## YELENA LANDA

did knowingly and intentionally distribute and dispense, outside the usual course of professional practice and not for a legitimate medical purpose, mixtures and substances containing detectable amounts of oxycodone, a Schedule II controlled substance, each of which constitutes a separate count as follows:

| Count | Approximate Date of Distribution | Recipient | Controlled Substance (Dosage) |
|---|---|---|---|
| 1 | March 17, 2023 | Patient-1 | Oxycodone (30mg) |
| 2 | April 17, 2023 | Patient-1 | Oxycodone (30 mg) |
| 3 | May 22, 2023 | Patient-1 | Oxycodone (30 mg) |
| 4 | June 23, 2023 | Patient-1 | Oxycodone (30 mg) |

in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## FORFEITURE ALLEGATIONS

1.  The allegations set forth in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853.

2.  As a result of committing controlled substance offenses as charged in Counts One through Four of this Indictment, defendant

### YELENA LANDA

shall forfeit to the United States of America, pursuant to 21 U.S.C. § 853, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in this Indictment.

### SUBSTITUTE ASSET PROVISION

3.  If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred to or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).



A TRUE BILL

FOREPERSON

TODD BLANCHE
U.S. Deputy Attorney General

*Alina Habba*
ALINA HABBA
Acting U.S. Attorney
Special Attorney

*/s/ Robert L. Toll*
Robert L. Toll
Assistant United States Attorney

CASE NUMBER: 25-536 (MCA)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

## YELENA LANDA

## INDICTMENT FOR

21 U.S.C. § 841(a)(1) & (b)(1)(C)

A True Bill,

███████████████████

Foreperson

TODD BLANCHE
U.S. DEPUTY ATTORNEY GENERAL

ALINA HABBA
ACTING U.S. ATTORNEY
SPECIAL ATTORNEY

ROBERT L. TOLL
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973-645-6548